Sullivan, Plaintiff, vs. The State, Defendant.

*October 13—December 5, 1933.*

For the plaintiff there was a brief by *Sullivan & Taugher* of Milwaukee, and oral argument by *John J. Sullivan* and *James P. Taugher*.

For the defendant there was a brief by the *Attorney General* and *Herbert H. Naujoks,* assistant attorney general, and oral argument by *Mr. Naujoks.*

WICKHEM, J.  The complaint alleges that plaintiff has complied with sec. 14.38 of the Wisconsin Statutes, and brings this action pursuant to the terms of sec. 285.01, Stats.  After alleging the legal make-up of the Board of Regents of Normal Schools, and the fact that the Milwaukee normal school is one of the institutions under its jurisdiction, plaintiff alleges that the defendant, by its agent, the Board of Regents of Normal Schools, and Frank E. Baker, president of the Milwaukee normal school, on or about September 5, 1926, employed plaintiff as a full-time instructor at a salary of $2,000 a year; that on the 11th day of October, 1926, Frank E. Baker, president of the Milwaukee normal school, requested this plaintiff to take temporary charge of the school cafeteria, for the reason that it was losing money and that it had a very large deficit; that plaintiff agreed to take over the management of the cafeteria, and that plaintiff supplanted a manager who was receiving a salary of $1,800 a year for full-time work in managing the cafeteria.  It is alleged that plaintiff continued to teach a full schedule of class work and also to manage the cafeteria; that a short time after undertaking to manage the cafeteria plaintiff learned that her position had become permanent, and asked for compensation from President Baker; that plaintiff was informed that she would get her first check after Christmas of 1926; that later she was informed that no funds were available, although it was stated that she would be paid; that in October, 1927, Baker stated to plaintiff that he was short of funds and asked her to accept her pay from two separate funds; that from that time up to February 1, 1932, plaintiff received two separate checks, which varied in amounts but approximated plaint-

iff's total teaching salary; that plaintiff believed that these checks were for teaching and that no part was compensation for cafeteria services; that plaintiff carried a full teaching load in addition to her work as manager; that by the end of November, 1931, plaintiff paid off the $6,000 deficit, purchased new equipment in addition, and developed a small surplus; that in December, 1931, plaintiff asked to be relieved of the cafeteria responsibility; that in response to this letter, on the 23d of December, 1931, plaintiff received a letter dismissing her both as cafeteria manager and as instructor in household arts; that on the same day plaintiff demanded a hearing before the Board of Regents, pursuant to sec. 37.31, Stats., to determine the ground of her dismissal; that Baker then wrote to plaintiff informing her that she could continue as half-time instructor but again dismissed her from the cafeteria position; that thereafter plaintiff examined the records of the Board of Regents and discovered that she received her full teaching salary up to November, 1927, but that when she had agreed to accept her teaching pay from two separate funds, the records of the Board of Regents showed that one check was credited as teaching pay in the total sum of $1,100 yearly, and the records of the Board of Regents failed to disclose the payment of the other check; that in September, 1927, plaintiff's teaching salary was increased from $2,000 to $2,100, and that the records failed to disclose any resolution altering plaintiff's status as a full-time teacher; that plaintiff also examined the records of the Civil Service Commission, and learned that the other check she had been receiving was for cafeteria salary at $1,000 a year, and that the records of the Civil Service Commission further showed that plaintiff was receiving $125 a month from October 11, 1926, to the end of October, 1927, but that she never received such sums of money; that after learning the facts plaintiff refused to accept any other than a single check for her teaching compensation; that plaintiff repeated her demand for a hearing before the Board

of Regents to determine her status; that no written charges were ever filed against plaintiff stating the ground upon which her dismissal was based; that upon the hearing the Board of Regents admitted that plaintiff had received no notice that her status as a full-time teacher had been altered, and directed that plaintiff be considered a full-time teacher, but that her position would be discontinued as of July 1, 1932; that at this hearing plaintiff again demanded the compensation for managing the cafeteria, and was informed that she had received $1,000 yearly as cafeteria pay. Plaintiff further alleges that the printed records disclose that there is still due plaintiff the sum of $1,000 a year over a period of approximately four and one-half years, in the total sum of $4,583.31.

For a second and separate cause of action plaintiff realleges all the facts heretofore set out, and further alleges that in October, 1926, the Board of Regents and Frank E. Baker, president of the Milwaukee normal school, employed this plaintiff as cafeteria manager, and agreed to pay her for her services as such cafeteria manager; that the records of the Civil Service Commission show that plaintiff was paid the sum of $125 per month for the school year of 1926–1927, but that she never received any sum of money whatever during this period in payment of her regular cafeteria services. Plaintiff therefore demands judgment for $1,000.

The answer admits the appointment of plaintiff as a teacher and admits the subsequent designation to her of the duty to manage the cafeteria, but alleges that these services were a part of her duties as teacher. It is denied that plaintiff continued to carry a full teaching load and to manage the cafeteria, or that plaintiff demanded extra compensation, it being alleged that her first demand for extra compensation followed her dismissal. It is admitted that due to a shortage in the funds available for payment of teachers, Baker asked plaintiff to accept her teaching pay from two separate funds, and that she thereafter did re-

ceive checks approximating her total salary from two separate funds,—one paid out of cafeteria receipts. It is denied that plaintiff had more than a half teaching load; admitted that under her management the cafeteria paid off its debt and developed a surplus, and admits that plaintiff, in December, 1931, asked to be relieved of the cafeteria responsibility. It is denied that the letter dismissing plaintiff was in response to her demand for compensation, but alleges that it had its origin in complaints as to her efficiency as a teacher and as a manager. It is alleged that in the interview following this letter the reasons for plaintiff's dismissal were fully disclosed to her. It is admitted that plaintiff demanded a hearing; admitted that a hearing was had and plaintiff's position as instructor in household arts discontinued as of July 1, 1932; alleges that plaintiff was fully paid for her services.

With respect to the second cause of action, it is denied that the records of the Civil Service Commission show that plaintiff was paid $125 per month from October 11, 1926, to the end of October, 1927.

While the pleadings in this case are long and probably set forth the details of the transaction at an unnecessary length, the first cause of action attempted is either for the balance of teaching pay or for extra pay as cafeteria manager, it being alleged that plaintiff was hired as a full-time teacher and thereafter assigned extra duties for which it was agreed she should be paid. If the first cause of action is to recover for these services, it is for services beginning with the school year 1927–1928. Her second cause of action is to recover the value of her services as manager for the year 1926–1927.

Sec. 270.635, Stats., relating to summary judgments, provides:

"When an answer is served in an action to recover a debt or liquidated demand arising on a contract, express or

implied, sealed or not sealed, or on a judgment for a stated sum, the answer may be struck out and judgment entered thereon on motion and the affidavit of the plaintiff or of any other person having knowledge of the facts, verifying the cause of action and stating the amount claimed, and his belief that there is no defense to the action; unless the defendant by affidavit, or other proof, shall show such facts as may be deemed, by the court hearing the motion, sufficient to entitle him to defend."

Plaintiff is not entitled to a summary judgment. She supports her motion with an affidavit verifying the cause of action, stating the amount claimed and her belief that there is no defense to this action. However, defendant's answer not only traverses every material fact as to the terms of plaintiff's contract, but upon this motion is supported by affidavits of Frank E. Baker and Edgar G. Doudna, which put in issue all of the facts essential to the maintenance of this action. No useful judicial service will be performed by an extensive analysis of these affidavits. As an example of the extent to which the defendant's affidavits indicate a real issue, the affidavit filed by Frank E. Baker denies that he ever promised plaintiff any additional compensation for her work as manager. It alleges that her work as cafeteria manager was in accordance with her contract of hire. He denies that she ever taught a full-time teaching load, and alleges that the giving of two checks was a matter of necessity due to the fact that there was a shortage in the regular budget. This brief summary is enough to indicate that upon the present record this court cannot conclude that defendant has not shown that there is an arguable defense. *Commonwealth Fuel Co. Inc. v. Powpit Co. Inc.* 212 App. Div. 553, 209 N. Y. Supp. 603.

There being a genuine and substantial issue of fact presented by the pleadings, the motion must be denied. *United States v. Stephanidis,* 41 Fed. (2d) 958; *Hilbring v. Mooney,* 130 Misc. 273, 223 N. Y. Supp. 303; *Curry v.*

*MacKenzie,* 239 N. Y. 267, 146 N. E. 375; *Gravenhorst v. Zimmerman,* 236 N. Y. 22, 139 N. E. 766.

In *Hanna v. Mitchell,* 202 App. Div. 504, 196 N. Y. Supp. 43, it is said:

"It is not the object of this rule to deprive any one who has a right to a jury trial of an issue of fact, but to require a defendant, when it is claimed that in fact he has no honest defense and no *bona fide* issue, to show that he has at least an arguable defense."

This would end the matter presented to this court in this motion were it not for the contention of the state that a motion for summary judgment searches the record in the same manner as does a general demurrer. In *City Trust Co. v. Anthony Ricci Realty Co.* 137 Misc. 128, 241 N. Y. Supp. 481, it is stated:

"In motions for summary judgment the rule is the same as that which obtained when demurrers were in vogue; namely, that the record will be searched to ascertain where the first fault in pleading occurs and condemnation visited upon the first pleading found defective."

This rule is plainly sound because if the court is to be asked to grant the somewhat harsh relief of a summary judgment, surely it should be upon a complaint which states a cause of action.

It is not entirely clear from the complaint whether plaintiff intended in the first cause of action to sue for the unpaid balance of her teaching pay or for her extra compensation for managing the cafeteria. This, however, is not material if the court, out of the allegations of the complaint, may spell any cause of action. We are satisfied that no cause of action is stated by the first paragraph upon any theory. Treated as an action to recover extra compensation for cafeteria services, it is defective in that there is no allegation of any authority in Frank E. Baker to modify plaintiff's

contract of employment and to enter into a contract binding upon defendant for extra services. It has been held in numerous cases that the power to contract is in the Board of Regents. *State ex rel. Priest v. Regents,* 54 Wis. 159, 11 N. W. 472; *Gillan v. Board of Regents,* 88 Wis. 7, 58 N. W. 1042; *Skobis v. Regents,* 102 Wis. 122, 78 N. W. 426. The whole subject of the power of the Board of Regents to delegate authority has been so fully dealt with that no further exposition is deemed necessary.

If this is treated as a contract to recover the unpaid balance of plaintiff's teaching salary, we think there is no allegation of breach. It is alleged in paragraph seven of the complaint that Baker proposed to pay, and plaintiff consented to receive, her teaching pay from two separate funds, and that she thereafter did receive these checks which aggregated her total teaching salary. In paragraph twenty-one of the complaint she alleges that the total sum received by plaintiff was the sum of $2,000 the first year, and $2,100 each year thereafter until her position was discontinued, and that this sum was the amount of her teaching contract alone. The only answer to this seems to be that in spite of plaintiff's agreement to receive her teaching pay from two separate funds, and the understanding that these two checks were in payment of her teaching salary, since the records disclose that about half of this fund was as a matter of fact paid out of the cafeteria funds, and as a matter of bookkeeping ascribed to her services as cafeteria manager, there is still a balance due her for teaching services. We fail to see any justification for such a conclusion. If the amount of plaintiff's agreed salary was paid to her, no matter from what source, in the discharge of her services as teacher, and this arrangement was agreeable to plaintiff and was acquiesced in by her, we discover no ground upon which plaintiff can claim that she has not been paid merely because of the source

of the funds or the manner of bookkeeping adopted by her employer. Hence it is our conclusion that the first paragraph of the complaint states no cause of action.

The second cause of action is clearly for plaintiff's services as cafeteria manager. While this paragraph sufficiently alleges the authority of Baker to engage plaintiff by alleging the hiring by the Board of Regents, the terms of the contract are not stated, the amount of the salary agreed upon is not stated, nor is it stated that any salary was agreed upon. This paragraph cannot be sustained as stating a cause of action upon an express promise to pay to plaintiff an agreed salary for the reasons just mentioned. By taking a very liberal view of the pleading, it can be considered to state sufficiently upon demurrer a cause of action for the reasonable value of plaintiff's services as manager of the cafeteria for the year 1926–1927. It may be said that the allegations with respect to the amount which the Civil Service Commission's records show to have been paid or to constitute a justifiable salary for this position, taken together with allegations as to the amount previously paid to a full-time manager of the cafeteria, are in effect allegations that the services were reasonably worth the sum claimed by plaintiff in this action.

A further difficulty remains. As has been heretofore indicated, the motion for summary judgment searches the record just as does the general demurrer, but the question remains whether the record searched is the same in each instance. If rules of pleading applicable to demurrers are to be followed, it would necessarily be concluded from what has heretofore been said that plaintiff's first cause of action is fatally defective, and the second cause of action sufficient. Such must be the conclusion if the record consists solely of plaintiff's pleadings, and if each paragraph must be considered to stand as a separate complaint unaided and unaffected by allegations in the other paragraph which have not been effectively incorporated by reference.

If, however, the real spirit and purpose of the summary judgment law are to be given effect, the search of the record should include the affidavits in support of the complaint, and where these affidavits disclose no cause of action, the complaint should be dismissed even though, without the affidavits and solely upon the pleadings, a demurrer would have to be overruled as to all or a part of it. The purpose of providing for summary judgments is to avoid delay and to cut down the frequent contributions to injustice which proceed from technicalities of pleading and practice. It seems quite as important to us that the plaintiff's cause of action should be summarily dismissed when no cause of action is shown by the pleading and affidavits, as it is that defendant's formally sufficient pleadings should be disregarded when the plaintiff has satisfied the terms of the statute and the defendant has failed to convince the court that there exists a genuine issue. In this case resort to plaintiff's affidavits indicates that her sole claim that there was an understanding that the work in the cafeteria was to be undertaken in addition to full-time work, and to be paid for in addition to her full-time teaching salary, is based upon personal dealings with the president of the normal school, Frank E. Baker. Plaintiff produces no records to support the allegation in the second cause of action that this claimed agreement was made by or with the authority of the Board of Regents.

Under the circumstances can this court give to her technically sufficient allegations of a hiring by the Board of Regents their full face value, in view of the fact that no such allegations occur in the first paragraph setting forth the first cause of action, and further in view of the fact that the affidavits do not disclose any such authority? We have concluded that we cannot, consistently with the purpose and intent of the summary judgment law which plaintiff invokes, and that upon the entire record, including the affidavits, plaintiff shows no right to recover.

*By the Court.*—Motion denied and action dismissed.